**In re Dr. Manuel MARKS, Debtor.**

**Herman CORN**

v.

**Manuel MARKS.**

**Civil Action No. 95–3693.**

United States District Court,
E.D. Pennsylvania.

Feb. 12, 1996.

David N. Bressler, Lesser & Kaplan, P.C., Blue Bell, PA, for Herman Corn.

Marvin Krasny, Liza B. Leidner, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for Manuel Marks.

Frederic Baker, Trustee, Philadelphia, PA, pro se.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

Debtor Dr. Manuel Marks ("Marks") filed this appeal from the bankruptcy court's grant of summary judgment for Dr. Herman Corn ("Corn") based on a finding that Marks' debt to Corn was nondischargeable. The court affirms the judgment of the bankruptcy court.

### Factual and Procedural History

From 1965 until 1988, Marks and Corn were partners and coshareholders in a periodontal dental practice. In 1988, Corn sought to sell his share of the practice because of his permanent disability. Corn claimed that Marks repeatedly disavowed any interest in buying his share of the practice until the summer of 1988, when Marks persuaded Corn to end negotiations with potential buyers and sell to Marks. Corn also claimed that Marks refused to honor either their agreed-upon terms or the buyout provisions set forth in the Shareholder Agreement.

In accordance with the Shareholder Agreement, under which the parties agreed to arbitrate disputes under the Pennsylvania Arbitration Act of 1927, Corn and Marks arbitrated their dispute before a panel of arbitrators of the Commercial Arbitration Tribunal of the American Arbitration Association. The Arbitrators' Award on July 30, 1991 provided:

> 1. On the claim of HERMAN CORN ... against MANUEL H. MARKS ..., includ-

ing punitive damages, MARKS shall pay to CORN the following amounts:

a. The sum of $281,114.00 with interest at the legal rate commencing September 1, 1988 until the above amount has been fully satisfied (More particularly, interest in the sum of $29,121.18 to June 3, 1991, and thereafter, the sum of $27.73 for each day until the above is fully satisfied);

b. The sum of $20,000.00 for punitive damages....

At the request of the parties, the Arbitrators issued a Clarification on September 13, 1991:

The requests for Modification of the Award are granted in part and said Award is modified as follows:

1. On the claim of HERMAN CORN ... against MANUEL H. MARKS ... including punitive damages, MARKS shall pay to CORN the following amounts:

(a) The sum totalling $270,000.00 from MARKS to CORN i) under their agreement (which extinguishes all of CORN'S rights in and to the Corporation) and ii) for intentional interference with an economic opportunity by MARKS against CORN, with interest at the legal rate, commencing September 1, 1988 and thereafter until the above sum is fully satisfied....

In all other respects, said Award dated July 30, 1991 is here republished and affirmed.

On March 9, 1992, the Montgomery County Court of Common Pleas confirmed the Arbitration Award of $270,000 in compensatory damages, $54,000 in interest thereon (from September 1, 1988 through December 30, 1991), $20,000 in punitive damages, $1750 in fees, plus a per diem of $44.18 per day from December 30, 1991; on March 17, 1992, the court entered judgment against Marks in the amount of $349,167.26.

On July 13, 1992, Marks filed for bankruptcy, admittedly in large part to avoid satisfaction of the Corn judgment. Corn twice moved for dismissal of Marks' bankruptcy petition for bad faith filing: he withdrew one motion; Judge Twardowski's denial of the second motion was affirmed by this court. Corn then filed an adversarial complaint to determine the dischargeability of the debt owed him by Marks.

Corn claimed that Marks' debt was nondischargeable because the Arbitration Award was for inflicting a willful and malicious injury and included punitive damages. Marks denied that the debt was nondischargeable and argued summary judgment was precluded by three genuine issues of material fact: whether the compensatory damages portion of the Arbitration Award was for Corn's rights in the Corporation or for Marks' intentional interference with Corn's economic opportunity; the rules of evidence governing the arbitration; and the standard of proof employed by the Arbitrators. Marks contended that these issues prevented the confirmed Arbitration Award from estopping relitigation of whether his conduct was willful and malicious for purposes of the dischargeability determination.

The bankruptcy judge found the differences between arbitration and bankruptcy proceedings did not prevent the preclusive effect of a confirmed arbitration award and gave collateral estoppel effect to the confirmed Arbitrators' decision that Marks was liable for intentional interference with Corn's economic opportunity, a willful and malicious injury. The bankruptcy judge then found that the total amount of compensatory and punitive damages was a nondischargeable debt incurred for infliction of a willful and malicious injury under 11 U.S.C. § 523(a)(6). Marks has appealed the grant of Corn's motion for summary judgment of nondischargeability.

**Discussion**

When a district court reviews a bankruptcy court's judgment, "the bankruptcy judge's factual findings should stand unless clearly erroneous." *Matter of Jersey City Medical Center,* 817 F.2d 1055, 1059 (3d Cir. 1987). The bankruptcy judge's conclusions of law are subject to plenary review. *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir.1988).

There are two issues on appeal. First, the court must determine whether the bankruptcy judge was correct in holding that the confirmed Arbitration Award collaterally estops relitigating whether Marks inflicted a

willful and malicious injury on Corn. Second, the court must determine whether the bankruptcy judge was correct in finding the entire debt, including the compensatory damages awarded, nondischargeable in bankruptcy. All Marks' arguments on appeal challenge the bankruptcy judge's conclusions of law, not findings of fact. The court exercises plenary review.

■ Collateral estoppel may bar relitigation of certain issues in subsequent dischargeability determinations in bankruptcy court. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."); *see also Matter of Ross*, 602 F.2d 604, 607 (3d Cir.1979) (collateral estoppel may bar relitigation in bankruptcy dischargeability determinations). In *Grogan*, the Court held that the same burden of proof, i.e., a preponderance of the evidence, governs both the determination of common law fraud and dischargeability in bankruptcy: "If the preponderance [of the evidence] standard also governs the question of nondischargeability, a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and that were actually litigated and determined in the prior action." *Grogan*, 498 U.S. at 284, 111 S.Ct. at 658 (citation omitted).

■ The bankruptcy judge must assess the preclusive effect of the prior state court proceeding by applying state rules governing collateral estoppel. *In re Brown*, 951 F.2d 564, 568–69 (3d Cir.1991) ("Generally, 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'") (citations omitted). In *In re Brown*, the Court of Appeals held that the bankruptcy court was required to accord preclusive effect to a New Jersey state court summary judgment awarded in favor of a bank against the debtor in a mortgage foreclosure action. The Court of Appeals found that the Restatement (Second) of Judgments was "expressive of New Jersey law on issue

preclusion;" the collateral estoppel analysis was governed by the Restatement. *Id.* at 569.

■ The Full Faith and Credit statute, 28 U.S.C. § 1738, provides that: "[State] judicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738 (1994). A state court's confirmation of an arbitration award is a final judgment with the preclusive effect accorded it by state law. *Jalil v. Avdel Corp.*, 873 F.2d 701, 704 (3d Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). A court reviewing the confirmation of an arbitration award must "apply section 1738 and follow its directive of assessing the preclusive effect the state court's decision would be given by another court in the state." *Id.*

In *Jalil*, plaintiff employee filed several grievances against his employer, and the grievances were submitted to arbitration. The arbitrator ruled in favor of the defendant employer. A New Jersey state court, finding that the arbitrator acted within his powers and that no undue means were employed to procure his decision, subsequently affirmed the arbitrator. Jalil, alleging violations of Title VII, then filed an action against his employer in federal court. The employer argued that the Title VII suit was precluded by the state court's confirmation of the arbitrator's finding that Jalil suffered neither retaliatory discharge nor discharge without cause. The Court of Appeals, after analyzing the state court review of the arbitration award, held that the state court did not reach the merits of the Title VII question, *Jalil*, 873 F.2d at 705, and "did not address *the same issues* raised in Jalil's Title VII action," *Id.* at 706 (emphasis added). The confirmation of the arbitration award did not collaterally estop federal litigation of the Title VII claims because the issues and proof were different. *Id.* at 705.

■ *Jalil* directs the court to look to Pennsylvania's laws of preclusion to determine the collateral estoppel effect of the

Montgomery County Court of Common Pleas' confirmation of the Arbitration Award. A Pennsylvania state court's judgment confirming an arbitration award is accorded the same status as any other state court judgment. 5 P.S. § 174 (1963); 42 Pa.C.S.A. § 7316 (1982).[1]

■ In Pennsylvania, "[c]ollateral estoppel applies if (1) the issue decided in the prior case is identical to the one presented in the latter case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person in privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and, (5) the determination in the prior proceeding was essential to the judgment." *Office of Disciplinary Counsel v. Duffield,* 537 Pa. 485, 644 A.2d 1186, 1189 (1994) (citation omitted).

To determine whether collateral estoppel applied, the bankruptcy judge reviewed the earlier proceedings. There was no formal record of the arbitration proceedings, but there was a written Arbitration Award, and a subsequent Clarification of the Award, stating the claims for which damages were awarded and the amounts. The bankruptcy judge reviewed the Award and Clarification, held a hearing on the summary judgment motion where both parties presented argument, and permitted the parties to file supplemental memoranda of law.

■ The bankruptcy judge, making findings and facts and conclusions of law, decided that the confirmed Arbitration Award had collateral estoppel effect because it was a determination that Marks committed a malicious and willful act. On appeal, Marks contends that the Arbitrators' award of damages for intentional interference with Corn's economic opportunity should not bar relitigation of whether it was a willful and malicious injury because the bankruptcy judge did not and could not find the requirements of collateral estoppel were satisfied,[2] different standards of misconduct apply to intentional interference and nondischargeability, and different evidentiary rules govern arbitrations and bankruptcy court proceedings.

The state court's confirmation of the Arbitration Award satisfies the *Duffield* requirements and estops relitigation of whether Marks inflicted a willful and malicious injury on Corn. Under Pennsylvania law, when a state court receives a petition for confirmation of an arbitration award under the Arbitration Act of 1927, it may confirm the award, or it may modify or correct the award "[w]here the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict." 5 P.S. § 171(d), 42 Pa.C.S.A. § 7302(d)(2). The Montgomery County Court of Common Pleas was required to apply this standard in confirming the Arbitration Award.

The issues involved in deciding whether or not to confirm the Arbitration Award were identical to the issues involved in the dischargeability determination. In addressing the propriety of the Arbitrators' Award, the state court was required to consider their finding that Marks was liable to Corn in satisfaction of his rights under their

1. Under the Shareholders Agreement, the parties agreed to arbitrate under the 1927 Arbitration Act. That Act was repealed in 1980, but under the terms of the 1980 Act, agreements made under the 1927 Act are still subject to certain terms of the 1927 Act. 42 Pa.C.S.A. § 7302(d)(2) and accompanying historical notes (1982). For ease of reference, where warranted, parallel citations have been provided to both the 1927 Act and the 1980 Act.

2. Marks assumed that the requirements governing the collateral estoppel determination were the factors enunciated in *Ross:*
"(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment."
*Ross,* 602 F.2d at 608 (quoting *Haize v. Hanover Ins. Co.,* 536 F.2d 576, 579 (3d Cir.1976)). However, *Ross,* unlike the instant action, concerned the collateral estoppel effect a prior *federal* court judgment should have been accorded in a subsequent dischargeability determination in bankruptcy court; state law of collateral estoppel governs the preclusive effect accorded a prior *state* court judgment by the bankruptcy court. *See, e.g., In re Brown,* 951 F.2d 564 (3d Cir.1991).

agreement and for intentional interference with an economic opportunity.[3] This involved consideration of Marks' liability for tortious interference. The bankruptcy judge found the resolution of the issue of intentional interference with an economic opportunity determined the debt was non-dischargeable because it was incurred for willful and malicious conduct.[4]

 Under 11 U.S.C. § 523(a)(6), "A discharge under ... this title does not discharge an individual debtor from any debt— for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (1993). "An injury is willful and malicious under the Code only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result." *In re Conte*, 33 F.3d 303, 305 (3d Cir.1994). The key to "willful and malicious" lies in the intent of the debtor.

 In Pennsylvania, the elements of tortious intentional interference with an economic opportunity are: "(1) the existence of a contractual relationship; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of a privilege or justification for such interference ... and (4) damages resulting from the defendant's conduct." *Triffin v. Janssen*, 426 Pa.Super. 57, 626 A.2d 571, 574 (1993) (footnote omitted) (citation omitted), *appeal denied*, 536 Pa. 646, 639 A.2d 32 (1994).[5]

The tort of intentional interference requires an intent to injure; this makes it a "willful and malicious injury." The same standard governs the finding of intentional interference and determination of dischargeability; the issue involved in the state court confirmation of the Arbitration Award was the same issue presented in the bankruptcy court, i.e., whether Marks inflicted a willful and malicious injury on Corn. Finding that Marks intentionally interfered with Corn's economic opportunity was a finding that Marks inflicted a "willful and malicious injury" on Corn.

The standard governing state court review of the Arbitration Award establishes that Marks had a full and fair opportunity to litigate whether he inflicted a willful and malicious injury on Corn. Under the 1927 Act, the court was required to reexamine the issues arbitrated and determine whether the Arbitrators' decision was correct. Both parties had the right to move for confirmation, modification, or vacation of the Award and to submit supporting materials. Materials submitted to the court upon a motion to confirm include: "The agreement.... The testimony, if taken stenographically.... The award.... Each notice, affidavit, or other paper, used upon an application to confirm, modify, or correct the award, and a copy of each order of the court upon an application." 5 P.S. § 174.

The Arbitrators did not issue any findings of fact and made no record or transcript

**3.** Only the tort claim requires discussion; the finding of willful and malicious tortious behavior is sufficient to make the entire debt, including damages imposed for extinguishment of Corn's rights in the Corporation, nondischargeable.

**4.** Both Bankruptcy Judge Twardowski and this court have previously assumed in denying dismissal of the bankruptcy for bad faith filing that the Arbitrators' finding of intentional interference with an economic opportunity and imposition of punitive damages would collaterally estop Marks from relitigating whether the debt was based on intentional misconduct. *In re Marks*, 92–22867T, Order of Bankruptcy Judge Thomas Twardowski, September 16, 1993, at 2 n. 2; *In re Marks*, 93–5715, Order of District Judge Norma Shapiro, August 29, 1994, at 8.

**5.** Marks has cited the elements of intentional interference with a contractual relationship as intentional interference with an economic oppor-

tunity, and the court does so also. The court notes that the underlying facts may make reference to the tort of intentional interference with *prospective* contractual relations more appropriate, but the elements of this tort are for all relevant purposes the same elements enunciated in *Triffin. See Advent Systems Ltd. v. Unisys Corp.*, 925 F.2d 670, 673 (3d Cir.), *reh'g denied* (March 18, 1991) ("To prevail on a claim of intentional interference with prospective contractual relations under Pennsylvania law ... plaintiff must show the following: (1) a prospective contractual relationship; (2) *a purpose or intent to harm plaintiff* by preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) occurrence of actual damage.") (emphasis added) (footnote omitted) (citation omitted).

which could be submitted to the Montgomery County Court of Common Pleas, but in their written Award and subsequent Clarification of the Award they set forth the claims and damages for which they found Marks liable. The state court's judgment reflects that this was considered in its decision to confirm the Award.

It is not entirely clear what additional evidence or argument, if any, the state court considered, but Marks did have an opportunity to litigate the confirmation of the Award and whether he inflicted a willful and malicious injury in state court. Marks also had the right to appeal the entry of judgment on the Award. 5 P.S. § 175(a), 42 Pa.C.S.A. § 7320(a)(3), (4), (6).

Determining that Marks inflicted a willful and malicious injury on Corn was essential to the Montgomery County Court of Common Pleas' confirmation of the Arbitrators' Award. The Arbitrators' decision and Award and its confirmation depended on finding intent to injure, that is, a finding of willful and malicious conduct; without such a finding, the Arbitrators could not have awarded damages for tortious interference with an economic opportunity and the court could not have confirmed their Award.

■ Confirmation of the punitive damages awarded by the Arbitrators also demonstrates a finding of willful and malicious conduct was essential to the confirmation of the Arbitrators' Award. Under Pennsylvania law, punitive damages are an extraordinary remedy. *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1096 (1985) (plurality opinion), *overruled on other grounds, Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800 (1989), *limited as stated in, Ivins v. Celotex Corp.*, 115 F.R.D. 159 (E.D.Pa.1986).

> Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.

Restatement of Torts (Second) § 908(2) (1979).

■ Punitive damages are awarded "only if the conduct was malicious, wanton, reckless, willful, or oppressive." *Rizzo v. Haines,* 520 Pa. 484, 555 A.2d 58, 69 (1989) (citation omitted). Like the *Conte* standard governing dischargeability determinations, the standard governing imposition of punitive damages focuses in part upon the "actor's state of mind:" willful or malicious behavior, defined as an intent to harm or reckless indifference to the rights of others. *Id.* The state court could not confirm the Arbitrators' award of punitive damages to Corn without finding that Marks inflicted a willful and malicious injury on Corn.

Marks, the party against whom preclusion is sought, was involved in both the state court and bankruptcy court proceedings. Marks was a party to the arbitration, the state court confirmation of the Arbitration Award, and the dischargeability determination in the bankruptcy court.

Marks' intent was determined by a valid and final judgment on the merits. The Montgomery County Court of Common Pleas confirmed the Award of the Arbitrators and entered a judgment against Marks. This is a valid and final judgment for all purposes, including collateral estoppel, under both the Arbitration Act of 1927 and the Act of 1980. "The judgment so entered shall have the same force and effect, in all respects as, and be subject to, all the provisions of law relating to a judgment on an action at law, and it may be enforced as such in accordance with existing law." 5 P.S. § 174; *see also* 42 Pa.C.S.A. § 7316 ("Upon the granting of an order of court confirming, modifying or correcting an award, a judgment or decree shall be entered in conformity with the order. The judgment or decree may be enforced as any other judgment or decree.").

■ All of the requirements for collateral estoppel were satisfied. Marks' contention that different standards governed the determinations of intentional interference and dischargeability of the debt is incorrect; in both proceedings, the same issue was decided

based upon the same standard: was Marks' conduct willful and malicious? Marks' argument that different evidentiary rules governed the arbitration is not persuasive; there is no requirement that the same rules of evidence must apply. If there were, the doctrines of preclusion and the Full Faith and Credit Statute would be meaningless because a state court judgment, governed by state rules of evidence, would never have preclusive effect in federal court. The state court's confirmation of the Arbitrators' finding of intentional interference with an economic opportunity barred relitigation in the bankruptcy court of whether Marks inflicted a willful and malicious injury on Corn.

 The Arbitrators did not allocate but awarded on the entire claim: $270,000 under the Corn/Marks agreement, extinguishing Corn's rights in and to the Corporation and for intentional interference with an economic opportunity by Marks against Corn, and $20,000 in punitive damages. The only explicit designation of damages within the Award was the $20,000 in punitive damages. Marks, arguing that the punitive damages were awarded for the tort of intentional interference and the compensatory damages for an unspecified contractual claim, conceded at oral argument that the punitive damages component is nondischargeable but contested the nondischargeability of the compensatory damages.

Judgment debts based on willful and malicious conduct with both compensatory and punitive components are nondischargeable in their entirety. In *Grogan*, the Court, explaining that it would not consider whether the fraud exception to dischargeability applied to portions of the debt in excess of the actual value the debtor acquired through fraud, suggested that debts for willful and malicious injuries under § 523(a)(6) including both compensatory and punitive damages would be nondischargeable in their entirety. *Grogan*, 498 U.S. at 282 n. 2, 111 S.Ct. at 657 n. 2 ("Arguably ... those judgments that include punitive damages awards are more appropriately governed by § 523(a)(6)."). "The exception [under 523(a)(6) ] is measured by the nature of the act, *i.e.*, whether it was one which caused willful and malicious inju-

ries. *All liabilities resulting therefrom are nondischargeable.*" *In re Adams*, 761 F.2d 1422, 1428 (9th Cir.1985); *see also In re Miera*, 926 F.2d 741, 745 (8th Cir.1991); *Coen v. Zick*, 458 F.2d 326, 329–30 (9th Cir. 1972); *In re Benson*, 180 B.R. 796, 800–01 (Bankr.W.D.Pa.1995); *In re Marx*, 171 B.R. 218, 223 (Bankr.N.D.Tx.1994); *In re Webster*, 1 B.R. 61, 64 (Bankr.E.D.Va.1979). When "both punitive and compensatory damages flow from one and the same course of conduct.... [b]oth types of liability are within the statute as 'liabilities' for 'willful or malicious injuries to the person or property of another.'" *Coen*, 458 F.2d at 329–330.

The Arbitrators' Award in favor of Corn was for a willful and malicious injury. The final Award was in two sums, one for compensatory and one for punitive damages, but each was awarded for both the extinguishment of Corn's rights in the Corporation and for Marks' intentional interference with an economic opportunity. In the absence of an allocation of the Award by the Arbitrators, the state court judgment entered on the Arbitrators' Award was a judgment for a single course of willful and malicious conduct by Marks. The compensation for Corn's rights in the Corporation related to Marks' willful and malicious conduct: all damages, compensatory and punitive, arising from this conduct are nondischargeable under § 523(a)(6).

## Conclusion

The Montgomery County Court of Common Pleas confirmed the Arbitrator's finding that Marks intentionally interfered with an economic opportunity of Corn, i.e., that Marks' conduct was willful and malicious. The judgment of the Montgomery County Court of Common Pleas is a final judgment collaterally estopping relitigation of this issue. Because the judgment debt arises from the infliction of a willful and malicious injury, the entire debt is nondischargeable under 11 U.S.C. § 523(a)(6). The decision of the bankruptcy court that the entire debt is nondischargeable is affirmed.

### MEMORANDUM AND ORDER

AND NOW, this 9th day of February, 1996, following oral argument on September 18, 1995, it is ORDERED that the judgment

of the bankruptcy court granting summary judgment in favor of Corn and against Marks is AFFIRMED.