In re MUSHROOM TRANS-
PORTATION COMPA-
NY, INC., Debtor.

Jeoffrey L. Burtch, Trustee,
et al., Appellants,

v.

Security Pacific Bank
Oregon, Appellee.

No. Civ.A. 98–5244.
Bankruptcy No. 85–02575F.
Adversary No. 94–1004.

United States District Court,
E.D. Pennsylvania.

April 11, 2000.

Kent Cprek, Philadelphia, PA, for plaintiff.

Richard L. Hahn, Bala Cynwyd, PA, for defendant.

## MEMORANDUM

REED, Senior District Judge.

This is an appeal (Document No. 1) by appellants Jeoffrey L. Burtch, Trustee in the bankruptcy of Mushroom Transportation Company, Inc., Michael Arnold, Robbey Realty, Inc., Penn York Realty Company, Inc., and Trux Enterprises, Inc. (hereinafter collectively referred to as "appellants" or "plaintiffs"), from the order of the bankruptcy court dated August 24, 1998, granting summary judgment to defendant Security Pacific Bank Oregon ("Security Pacific"). For the reasons that follow, the order of the bankruptcy court will be reversed.

## I. BACKGROUND

Jonathan Ganz, former counsel for Mushroom Transportation Company, Inc., was convicted of wrongfully using proceeds from the bankruptcy estates of, among others, Mushroom Transportation, Penn York Realty, Robbey Realty, and Trux Enterprises (the debtors' estate) for his own purposes. The trustee of the debtors' estate, Burtch, and the debtors filed this action against Security Pacific, and other actions against other alleged recipients of these stolen funds. Appellants claim that Ganz improperly paid more than $200,000 to Security Pacific using funds from the Mushroom estate. The payments were allegedly made to satisfy a loan made by Security Pacific to TRAP, a bankrupt New Jersey corporation owned by a friend of Ganz, Richard Denoncour, who was personally liable on the loan.

This action consists of claims for conversion, turnover (under 11 U.S.C. §§ 542 and 543). and unauthorized transfer (under 11 U.S.C. §§ 549 and 550), and for a declaration that Security Pacific holds this property in constructive trust on behalf of the debtors' estate. Security Pacific moved for summary judgment on all counts. The bankruptcy court never reached the merits of plaintiffs' claims and instead held as a

matter of law that the claims were brought outside the relevant limitations periods, and thus were procedurally barred. Accordingly, it granted summary judgment in favor of Security Pacific.

## II. ANALYSIS

■ This court will review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo. See In re Anes,* 195 F.3d 177, 180 (3d Cir.1999) (citing *Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir.1992)). In deciding a motion for summary judgment, the bankruptcy court is held to the standard set forth in Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R.Bkrtcy.Proc. 7056. Summary judgment should be granted where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, the court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor. *See Armbruster v. Unisys,* 32 F.3d 768, 777 (3d Cir. 1994). The dispute of material fact must be "genuine" such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also Todish v. Cigna Corp.,* 206 F.3d 303 (3d Cir.2000). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a).[1] The decision of the bankruptcy court that there was insufficient evidence to support plaintiff's claim and thus withstand summary judgment was a conclusion of law that is subject to plenary review by this Court. *See Corn v. Marks (In re Marks),* 192 B.R. 379, 382 (E.D.Pa.1996) (citing *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir.1988)).

### A. Forum Selection Clause

■ Appellants first take issue with the bankruptcy court's reliance on Pennsylva-

---

1. The bankruptcy court had jurisdiction pursuant to 29 U.S.C. § 157(a), (b)(2)(B).

nia law, claiming that a choice of law provision in the loan agreement between Security Pacific and TRAP required the bankruptcy court to apply the law of New Jersey.[2] The loan agreement between Security Pacific and TRAP contained a forum selection clause that stated, "All of the terms and conditions herein and the rights, duties and remedies of the parties shall by governed by the laws of the State of New Jersey." (Joint Appendix, Vol. II, 2090, Loan Agreement). Appellant, a non-party to the loan agreement, attempts to enforce this forum selection clause against a party to the agreement.

The Court of Appeals for the Third Circuit held in *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287 (3d Cir.), *cert. denied,* 519 U.S. 1028, 117 S.Ct. 583, 136 L.Ed.2d 513 (1996) that an arbitration clause and a forum selection clause "[could] be enforced only by the signatories to those agreements." *Id.* at 1296 (citing *First Options of Chicago v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (party could not be compelled to arbitrate claims pursuant to contracts they had not signed)). Non-parties to such an agreement, the court of appeals noted, could

only enforce the agreement where there was an obvious and close nexus between the non-parties and the contract or contracting parties. *See id.* at 1296–97 (citing *Barrowclough v. Kidder, Peabody & Co., Inc.* 752 F.2d 923, 938–39 (3d Cir.1985) (non-signatory defendants could enforce arbitration clause against signatory plaintiff because non-signatory defendants were "directly tied" to another signatory party and did not object to arbitration)); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110 (3d Cir.1993) (arbitration clause enforceable by non-signatory sister corporation that participated in alleged breaches of fiduciary duties).

Courts have held that such clauses are enforceable only against "nonsignatories that are closely related to the contractual relationship or that should have foreseen governance by the clause." *Jordan v. SEI Corp.,* No. 96–1616, 1996 WL 296540, at *6, 1996 U.S.Dist. LEXIS 7627, at *18 (E.D.Pa. June 4, 1996).[3] Because a close relationship or foreseeability is required to enforce such a clause *against* a non-party to an agreement, it is axiomatic that the same would be required for such a clause to be enforceable *by* a non-party.[4] The

---

**2.** The only difference appellants point to between the law of the two fora is that under New Jersey law, the statute of limitations for the conversion claim is six years, whereas under Pennsylvania law, the limitations period is two years. *See On Air Entertainment Corp. v. National Indem. Co.,* 210 F.3d 146, 149 (3d Cir.Pa.2000) (citing *Lucker Mfg. v. Home Ins. Co.,* 23 F.3d 808, 813 (3d Cir. 1994); *Williams v. Stone,* 109 F.3d 890, 893 (3d Cir.), *cert. denied,* 522 U.S. 956, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997)) ("before a choice of law question arises, there must actually be a conflict between the potentially applicable bodies of law"). Thus, appellants' argument based on the forum selection clause could possibly hold significance for only one of appellant's claims. I ultimately conclude that it holds significance for none of their claims.

**3.** The case relied upon so heavily by plaintiffs, *Nova Ribbon Prod., Inc. v. Lincoln Ribbon, Inc.,* 1992 WL 211544, No. 89 4340, 1992 U.S.Dist. LEXIS 13123 (E.D.Pa. Aug. 24,

1992), is inapposite. There, the court considered three agreements signed by the parties, and held that the forum selection clause in one agreement applied to all three agreements. The case had nothing to do with whether non-parties to a contract could be bound by a forum selection clause or could bind a party.

**4.** There is an argument to be made that non-parties to a contract seeking to enforce a forum selection clause should be required to make an even greater showing than parties to a contract seeking to enforce such a clause against non-parties. It is one thing for a party, with rights and obligations under a contract, to seek its enforcement against others. It is quite a another, however, for an non-party individual or organization to seek to enforce a particular clause against a contracting party. It stretches logic and reason to assert that non-party parties with absolutely no rights or obligations under a contract (indeed, who were nowhere in the picture when the contract was signed) should be al-

cases in which courts have concluded that there was a sufficiently close relationship have all involved non-parties who were proximate to the contract at the time of formation, such as third-party beneficiaries, *see Baker v. LeBoeuf, Lamb, Leiby & Macrae,* 105 F.3d 1102, 1105 (6th Cir. 1997); [5] officers in a signatory corporation. *see Jordan,* 1996 WL 296540 at *6, 1996 U.S.Dist. LEXIS 7627 at *18; or owners of a signatory corporation, *see Hugel v. Corporation of Lloyd's,* 999 F.2d 206, 207–11 (7th Cir.1993).

Appellants have not demonstrated anything approaching the kind of relationship with the contract contemplated by the above cases. Neither appellants nor any party in the Mushroom bankruptcy proceedings was involved in the formation of the loan agreement between TRAP and Security Pacific. Appellants did not take part in the affairs of Security Pacific or TRAP at any time, nor was their interest in that loan remotely foreseeable at the time the loan agreement was signed or at any other time. Appellants' sole point of contact with the loan agreement was that their former counsel (Ganz) stole their bankruptcy estate's money and paid down the loan with it. The link between Burtch and Security Pacific's loan to TRAP is thus not a close one; rather, it is remote and a mere product of unfortunate events. I conclude, therefore, that the bankruptcy estate's relationship to the loan agreement was neither close enough nor foreseeable enough to grant appellants the right to enforce the forum selection clause against Security Pacific.

■■■ The bankruptcy court did not err in declining to apply the New Jersey limitations period to appellants' conversion claim, and thus I affirm the court's conclusion that it was not obliged to apply New Jersey law to plaintiff's claims, and that Pennsylvania law applies.[6] As well, I affirm the conclusions of the bankruptcy court in its thorough and masterful analysis as to the proper statutes of limitation for each of the four counts.[7]

lowed to enforce a clause against a party to the contract in later litigation.

**5.** *See also Citicorp Industrial Credit, Inc. v. J.H. Rutter–Rex Mfg. Co. Inc.,* No. 85–4943, 1986 WL 13146, at *1, 1986 U.S.Dist. LEXIS 17673, at *2 (E.D.La. Nov. 17, 1986) ("This Court is of the opinion, however, that a choice-of-law provision between two parties does not bind another party who is neither a third party beneficiary nor a signatory to the contract.").

**6.** Where no effective choice of law has been made, Pennsylvania applies a two-part choice of law analysis. *See Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 187 (3d Cir.1991). First, the court must determine whether an actual conflict exists. "Where the different laws do not produce different results, courts presume that the law of the forum state shall apply." *Financial Software Systems, Inc. v. First Union Nat'l Bank,* No. 99–623, 1999 WL 1241088, at *3, 1999 U.S.Dist. LEXIS 19479, at *8 (E.D.Pa. Dec. 16, 1999) (citing *McFadden v. Burton,* 645 F.Supp. 457, 461 (E.D.Pa. 1986)); *Denenberg v. American Family Corp.,* 566 F.Supp. 1242, 1251 (E.D.Pa.1983), *superseded on other grounds as explained in Miniscalco v. Gordon,* 916 F.Supp. 478, 481 (E.D.Pa.1996). If the states' laws produce different results, the court must determine whether a false conflict exists; that is, if only one jurisdiction's governmental interests would be impaired by the application of another jurisdiction's law. *See Petrokehagias v. Sky Climber, Inc.,* Nos. 96–6965, 97–3889, 1998 WL 227236, at *5, 1998 U.S.Dist. LEXIS 6746, at *10 (E.D.Pa. May 1, 1998) (citation omitted). Second, where a true conflict exists, the court must ascertain which state has the greater interest in the application of its law. *See LeJeune v. Bliss–Salem, Inc.,* 85 F.3d 1069, 1070 (3d Cir.1996) (citations omitted).

As noted above, Pennsylvania law conflicts with New Jersey law as to the statute of limitations only on the conversion claim. I believe that the case presents a false conflict; while different results might be had under New Jersey and Pennsylvania law, neither state's governmental interests would be impaired by the application of the other's law in determining the applicable statute of limitations. Even if a true conflict existed, as the bankruptcy court observed, Pennsylvania has a far greater interest than New Jersey in the recovery of the Mushroom bankruptcy estate assets. *See* Bankruptcy Mem.Op., at 9.

**7.** Appellants also appear to argue that federal law has preempted state statutes of limitations in all bankruptcy proceedings, and that

## B. Reasonable Diligence

Security Pacific raised the statute of limitations as a defense to appellants' conversion, constructive trust, and unauthorized transfer claims, and laches as to appellants' turnover claim. Appellants acknowledge that this action "was initiated just barely after the facial six-year limitations period ran." (Brief of Appellants, at 28). However, they argue that the statute of limitations period was tolled because they did not discover the loss until long after the thefts had taken place, and that they were not guilty of laches for the same.

■ Under Pennsylvania law, the plaintiffs bear the burden of proving their claims were filed within the applicable statute of limitations. *See In re TMI Litig. (Aldrich),* 89 F.3d 1106, 1116 (3d Cir.1996), *cert. denied,* 519 U.S. 1077, 117 S.Ct. 739, 136 L.Ed.2d 678 (1997) (citing *Osei–Afriyie v. Medical College of Pennsylvania,* 937 F.2d 876 (3d Cir.1991)). Thus, when a defendant has pointed to an absence of evidence that an action was filed within the relevant limitations period, in order to survive summary judgment, a plaintiff (here, appellants) must go beyond mere assertions and "designate 'specific facts showing there is a genuine issue for trial.'" *See id.* at 1116 (quoting *Celotex Corp. v. Catrett,*

477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

■ Appellants invoke Pennsylvania's discovery rule, which prevents the statute of limitations from running until "the plaintiff reasonably knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Aldrich,* 89 F.3d at 1116 (quoting *Cathcart v. Keene Indus. Insulation,* 324 Pa.Super. 123, 135, 471 A.2d 493, 500 (1984) (in banc)). The discovery rule will only toll the statute of limitations where the plaintiff shows he or she has exercised "reasonable diligence in ascertaining the existence of the injury and its cause," and the "question whether a plaintiff has exercised reasonable diligence is usually a jury question." *Bohus v. Beloff,* 950 F.2d 919, 925 (3d Cir.1991) (citing *Taylor v. Tukanowicz,* 290 Pa.Super. 581, 586, 435 A.2d 181, 183 (1981)). *See also Carney v. Barnett,* 278 F.Supp. 572 (E.D.Pa.1967); *Irrera v. Southeastern Pennsylvania Transp. Auth.,* 231 Pa.Super. 508, 331 A.2d 705 (1974); *Smith v. Bell Tel. Co. Pennsylvania,* 397 Pa. 134, 142, 153 A.2d 477, 479 (1959) ("Whether the statute has run on a claim is usually a question of law for the judge, but where, as here, the issue involves a factual determination, i.e. what is a reasonable period, the determination is for the jury.").[8]

a suit brought in a bankruptcy court may never fail due to a state statute of limitations because the bankruptcy estate is governed by federal law. This argument is without merit. First of all, statutes of limitations are treated as substantive rules of decision for purposes of the doctrine of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), which requires the application of state substantive law. *See In re TMI,* 89 F.3d 1106, 1112, n. 5 (3d Cir.1996), *cert. denied,* 519 U.S. 1077, 117 S.Ct. 739, 136 L.Ed.2d 678 (1997) Second, the U.S. Supreme Court set forth a preemption analysis in *California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987), suggesting that the intent of Congress or a direct conflict between state and federal law may be grounds for finding that a state law is preempted by an express federal law. Appellants do not apply this analysis to the facts of

this case, nor do they suggest what the proper "federal" limitations period would be if indeed federal law preempted state statutes of limitations.

8. Appellants also assert that the statute of limitations for conversion cannot run plaintiff knows the identity of the person who stole the property. This assertion has been squarely rejected by Pennsylvania courts. "The Pennsylvania Superior Court has generally found the discovery rule inapplicable in cases where a plaintiff was aware of an injury and its cause but had not determined the identity of the defendants within the limitations period." *Guenther v. Quartucci,* No. 94–2966, 1996 WL 67616, at *2, 1996 U.S.Dist. LEXIS 1654, at *7 (E.D.Pa. Feb. 12, 1996) (citing *Cathcart,* 324 Pa.Super. at 137–38, 471 A.2d at 501; *Piccolini v. Simon's Wrecking,* 686 F.Supp.

Plaintiff also raises the defense of laches; an equitable doctrine that bars relief when a plaintiff's delay in bringing a suit was a result of a failure to exercise due diligence and that delay prejudiced the defendant. *See Stilp v. Hafer,* 553 Pa. 128, 132, 718 A.2d 290, 292 (1998) (citing *Sprague v. Casey,* 520 Pa. 38, 45, 550 A.2d 184, 187 (1988)). In order to establish a defense of laches, defendants (here, appellees) must show (1) a delay arising from plaintiff's failure to exercise due diligence and (2) prejudice to the defendants resulting from the delay. *See id.* at 134, 718 A.2d at 293 (citing *Sprague,* 520 Pa. at 45, 550 A.2d at 187–88).[9]

Thus, under both laches and the statute of limitations, the central question before me is whether appellants have shown that there is sufficient evidence from which a reasonable fact finder could conclude that those responsible for the Mushroom bankruptcy estate exercised reasonable diligence. The test of reasonable diligence is an objective one that turns on the diligence that would have been exercised by a reasonable person in position of the debtors in possession. *See Svarzbein v. Saidel,* No. 97–3894, 1999 WL 729260, 1999 U.S.Dist.LEXIS 14516 (E.D.Pa. Sept. 10, 1999) (citing *Baily v. Lewis,* 763 F.Supp. 802, 806 (E.D.Pa.1991), *aff'd,* 950 F.2d 721 (3d Cir.1991); *Kingston Coal Co. v. Felton Min. Co., Inc.,* 456 Pa.Super. 270, 280, 690 A.2d 284, 289 (1997)).

In considering whether reasonable diligence was exercised in this case, the bankruptcy court focused on the status of the Mushroom estate during the time the thefts took place. From 1985 to 1990, Mushroom was a Chapter 11 bankruptcy estate, and during that time, no trustee was appointed. The bankruptcy court held that Mushroom debtors, in filing voluntary petitions under Chapter 11, became "debtors in possession," and thereby assumed the duties and obligations of a trustee under 11 U.S.C. § 1106(a), including the duty to under the discovery rule to exercise "reasonable diligence" in determining whether an injury to the estate had occurred and what its cause was. Bankruptcy Mem.Op., at 37. Observing that the facts were not in dispute, the bankruptcy court found that the debtors, which were in possession of the estate from 1985 until 1990, had delegated their responsibilities for the estate assets to their counsel, Ganz, who then bilked hundreds of thousands of dollars from the estate from 1987 to 1988. The bankruptcy court devoted a large portion of its decision to describing the fiduciary duties of trustees and debtors in possession to administer the estate and preserve the assets of the estate. These duties, according to the bankruptcy court, are so important as to be non-delegable, and because these duties are imposed on a debtor in possession by statute, a debtor in possession may not rely upon counsel to carry out those duties. The bankruptcy court concluded that no reasonable trier of fact could find that the Mushroom debtors in possession exercised reasonable diligence in supervising the liquidated assets of the Mushroom estate.

The bankruptcy court did not reference 11 U.S.C. § 327, which provides that "the trustee (and, therefore, the debtor in possession), with the court's approval, may employ one or more attorneys . . . to represent or assist the trustee in carrying out the trustee's duties under this title." Also, the court below did not discuss the elaborate statutory mechanism in the bankruptcy code that provides for compensation of attorneys who perform duties for

1063, 1073 (M.D.Pa.1988); *Merry v. Westinghouse Elec. Corp.,* 684 F.Supp. 852, 855 (M.D.Pa.1988)).

9. The bankruptcy court correctly held that the burden of establishing reasonable diligence under laches shifts to the plaintiff where a statutory limitations period that would bar legal relief has expired. *See E.E.O.C. v. Great Atlantic & Pacific Tea Co.,* 735 F.2d 69, 80 (3d Cir.), *cert. dismissed,* 469 U.S. 925, 105 S.Ct. 307, 83 L.Ed.2d 241 (1984).

402

trustees. *See* 11 U.S.C. §§ 329, 330.[10] In interpreting these provisions, the Court of Appeals for the Ninth Circuit has observed that "a trustee has the discretion to delegate trustee duties" even to paraprofessionals, and noted that Congress enacted these provisions "to encourage trustees to delegate their duties where such delegation would lower the costs of administration." *Boldt v. United States Trustee (In re Jenkins)*, 130 F.3d 1335, 1340 (9th Cir. 1997) (quoting *United States Trustee v. Boldt (In re Jenkins)*, 188 B.R. 416, 421 (9th Cir. BAP 1995)).[11]

The bankruptcy court did not decide whether a fact finder could consider, in deciding the issue of a reasonable debtors' diligence, the fact that the embezzlement of bankruptcy assets in this case took place within a statutory context that encourages trustees and debtors in possession to delegate duties to attorneys who are appointed and compensated by order of the bankruptcy court.[12] In doing so, the duties are routinely delegated, and cited a list compiled by the United States Trustee of "trustee services" that may be delegated. *Id.* at 782, n. 13. The list was four pages long, and included major duties such as selling real estate and investing funds and minor ones such as paying routine bills and preparing form documents. *See id.* at 783. At the end of the U.S. Trustee list were the words, in all capital letters, "THIS LIST IS NOT INTENDED TO BE EXHAUSTIVE." *Id.* The court concluded that "there are virtually no items on the list that would not, in one circumstance or another, be legitimately delegated to someone other than the trustee herself." *Id.*

However, as noted by the bankruptcy court in this case, the court in *Abraham* also held that a trustee is ultimately responsible for the administration of the estate and the safeguarding of the assets of the estate, and may never delegate his or her decisionmaking authority. *See Abraham*, 163 B.R. at 779. I think this statement sweeps too broadly. While a trustee certainly should never completely and permanently delegate all responsibility for the bankruptcy estate, the temporary delegation of even the core duties of monitoring and holding custody of liquid assets to an attorney approved by the court could be reasonable and even advisable in the context of a lengthy, complicated bankruptcy proceeding. As discussed in the text below, a reasonable trier of fact could conclude that the Mushroom debtors in possession did not completely abdicate their overall duties of safeguarding the estate, and rather temporarily entrusted the assets of the estate to a reputable bankruptcy law firm pursuant to a court-approved stipulation during a time when other bankruptcy matters took precedence over the monitoring of assets.

**10.** Section 329 requires attorneys to file a statement of the compensation paid or agreed upon, and provides that where such compensation is unreasonably high, the court may cancel the arrangement with counsel and order the return of excessive fees. *See* 11 U.S.C. § 329. Section 330 reads, in pertinent part, "After notice to any parties in interest and to the United States trustee and a hearing ... the court may award to a trustee, to an examiner, to a professional person employed under section 327 or to the debtor's attorney ... (1) reasonable compensation for actual, necessary services ... (2) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a).

**11.** I could locate no cases in which a court decided the question of whether a debtor in possession or bankruptcy trustee violated his or her fiduciary duty by delegating duties to attorneys or other professionals or paraprofessionals. The issue of trustees delegating duties arises most frequently in fee requests under § 330, and a number of courts, in that context, have held that the delegation of trustee duties is specifically contemplated by § 327. *See, e.g., In re Lowry Graphics*, 86 B.R. 74, 81 (Bankr.S.D.Tex.1988) (recognizing the practice of employing paralegals and paraprofessionals "to perform the trustee's duties" and that in some bankruptcy cases, "the effort of the trustee is to delegate as many of his duties in every case as can possibly be delegated" for the purpose of efficiency); *In re Bargdill*, 238 B.R. 711, 721 n. 7 (Bankr.N.D.Ohio 1999) (differentiating between the assignment of rights and the delegation of duties in bankruptcy proceedings and stating that "[t]he delegation of a Chapter 7 trustee's duties in some instances is essential to the efficient administration of a bankruptcy case, and is specifically contemplated by § 327 of the Bankruptcy Code").

The bankruptcy court in *In re Abraham*, 163 B.R. 772, 778 (Bankr.W.D.Tex.1994), a case relied upon by the bankruptcy court in this case, noted that a broad variety of trustee

**12.** On July 3, 1985, soon after Mushroom filed for bankruptcy, the bankruptcy court signed an order appointing the law firm of Pincus, Verlin, Hahn and Reich (the law firm of Ganz) general counsel for the debtor, pur-

bankruptcy court held the debtors in possession to a higher standard of diligence with respect to the delegation of duties than is warranted by all the circumstances, including the bankruptcy code and the relevant case law.

■ I conclude that because the delegation of trustee duties to bankruptcy counsel is "specifically contemplated" and encouraged by the bankruptcy code, a reasonable debtor in possession would, in certain circumstances, entrust the care of liquid assets to a court-appointed lawyer. *In re Bargdill*, 238 B.R. 711, 721 n. 7 (Bankr. D.Ohio 1999). I decide as well that there is no legal basis to conclude that the delegation of core trustee duties to court-appointed counsel for the estate by a debtor in possession is *per se* sufficient to show that the debtors in possession failed to exercise due diligence. Therefore, the question before me is not whether the delegation of a trustee's duties to counsel is *per se* unreasonable, but how much and what kind of delegation may take place before a trier of fact could conclude that the delegation was unreasonable. In light of the bankruptcy code, which appears to

encourage the liberal delegation of duties by trustees and debtors in possession, I conclude as a matter of law that debtors in possession have broad discretion to delegate duties to counsel. Therefore, the question of whether a particular delegation was objectively reasonable is a line for the jury to draw in all but extraordinary cases.

Turning to the facts of the case, the bankruptcy court focused on the conduct of the debtors in possession, which it identified as Mushroom corporate president Robert B. Cutaiar and Mushroom officer Michael A. Arnold,[13] during the period between Ganz's final theft of Mushroom funds in March 1988 and Mushroom's conversion to Chapter 7 in December 1990. Relying on the depositions of Ganz and Arnold, the declaration of Arnold, and an exchange of letters between Arnold and Ganz, the bankruptcy court observed that the officers of Mushroom "went on to other business ventures and undertook little or no responsibility for the debtors' asset liquidation, and no responsibility for preserving the proceeds of liquidation. That task was delegated completely to debtors' counsel." Bankruptcy Mem.Op., at 34.[14]

suant to § 327 (Document No. 18). The bankruptcy court also reviewed and authorized payments of tens of thousands of dollars to Ganz and his law firm out of Mushroom estate assets, including more than $60,000 in December 1986, $15,471 in October 1997, more than $9,000 in December 1987, $40,117 in February 1988, $12,792 in February 1989, and $14,007 in June 1989. Fees were awarded by the court to Ganz throughout the time he was embezzling Mushroom funds.

13. Cutaiar was apparently corporate president of Mushroom and an officer of its affiliates, whose assets were consolidated into the Mushroom bankruptcy estate. Arnold was at one point an officer in Mushroom, and served as "special liquidation counsel" during Mushroom's Chapter 11 bankruptcy phase, and later as Mushroom's Chapter 7 trustee.

I find confusing the bankruptcy court's observation that it is "imprecise" to focus on Arnold's actions in determining whether the debtor in possession exercised reasonable diligence. *See* Bankruptcy Mem.Op., at 42. While I understand that technically the debt-

ors in possession were the Mushroom corporation and its affiliate corporations, such corporate entities can act only through people, and Arnold and Cutaiar were apparently the only remaining officers of Mushroom in the late 1980s. Thus, the Court has no choice but to look to the conduct of the individual officers to ascertain whether reasonable diligence was exercised, and because there is little evidence on the record concerning Cutaiar, Arnold is all that is left. Regardless, it appears that the bankruptcy court did in fact focus on Arnold's conduct, because it based its conclusion on the fact that the debtors' "corporate officers," of whom Arnold was one, "abdicated their statutory responsibilities and delegated them to counsel," and observed that the officers apparently went on to other business ventures, which Arnold acknowledges doing. Bankruptcy Mem.Op., at 43. (Joint Appendix, Vol. II, 2599, Arnold Declaration, at ¶ 11).

14. Arnold stated in his declaration that "[b]y late 1986, the assets of Mushroom and its affiliates were substantially liquidated." (Joint Appendix, Vol. II, 2603, Arnold Decla-

The bankruptcy court concluded that such conduct did not constitute due diligence.

My review of the record, in light of the fact that reliance on counsel is inherent in the bankruptcy code, leads me to conclude that the bankruptcy court invaded the province of the fact finder by depreciating the evidence that could persuade a trier of fact that a reasonable person in the circumstances of the Mushroom debtors in possession would have relied on counsel and consequently failed to discover the thefts by Ganz until a later date.

First, Arnold states in his declaration that between early 1986 and August 1988, the bankruptcy proceedings were tied up by burdensome motions to consolidate the assets of Mushroom and its affiliates, and that the marshaling and distribution of Mushroom assets was put on hold pending the outcome of these essentially legal issues. (Joint Appendix, Vol. II, 2596–2600, Arnold Declaration, at ¶¶ 4, 7, 13). Furthermore, Arnold states, "The major uncertainty in terms of the financial condition of Mushroom and affiliates related to priority claims rather than assets," (*id.*, at ¶ 15), and that following the court's approval in June 1987 of a stipulation under which the Mushroom assets were turned over to Ganz to be held in escrow,[15] he and Cutaiar, while involved in other business ventures, "spent most of our time over the next several years analyzing and resolving priority claims" related to Mushroom, and that Arnold made some efforts to recover assets in the form of outstanding claims against prior insurance carriers. (*Id.*, at ¶ 17). "The distribution of assets was not

an issue until distribution came in sight after January 6, 1992 ..." (*Id.*, at ¶ 15).

Furthermore, there is evidence that during the time the thefts were taking place, Arnold sought information from Ganz concerning the Mushroom assets. In late 1987 or early 1988, Arnold requested an accounting of the Mushroom estate's assets from Ganz. Ganz responded by sending Arnold a copy of the June 1987 stipulation turning the assets over to Ganz to be held in escrow. *See supra,* note 13. Arnold then replied with a letter in which he stated that Ganz's response "[did] not clear up the problem of how much is being held and by whom." (Joint Appendix, Vol. II, at 2417, Letter from Michael C. Arnold, Feb. 10, 1998). Arnold's letter then set forth estimates of the assets based on the records of the debtors in possession and other numbers, and asked Ganz to confirm them. (*Id.*). Apparently there was some communication following that letter between Ganz and Arnold in which Ganz assured Arnold "that the assets were invested in passbook certificates of deposit at various banks...." (Joint Appendix, Vol. II, 2601, Arnold Declaration, at ¶ 14; Arnold Deposition, Oct. 12, 1994, at 73, 741). The deposition testimony of Ganz supports Arnold's recollection. Ganz acknowledged speaking with Arnold after the February 10, 1988 letter, and telling Arnold that "there were funds in an approximate amount—I wouldn't recall the exact number—and they were in CDs and we were holding them. I was holding them." (Joint Appendix, Vol. II, 2414, Ganz Deposition, Feb. 22, 1994). Arnold also stated that following the June 1987

---

ration, at ¶ 8). Thus, while the bankruptcy court suggests that the debtors in possession should have been doing more to oversee the liquidation of Mushroom assets from 1988–90, there is evidence that there was little for the debtors in possession to do in the way of asset liquidation, as the task was substantially completed two years prior to that.

**15.** The bankruptcy court entered an order on June 12, 1987, approving a stipulation under which "the remaining Escrow Funds (the en-

tire Mushroom estate) shall be turned over to Debtor's counsel, Pincus, Verlin, Hahn & Reich, P.C. (again, Ganz's firm) to be held in escrow for the benefit of the Debtor's estate" (Joint Appendix, Vol. II, 2386, Stipulation Allowing Final Payment to Continental Bank, at ¶ 4). (Joint Appendix, Vol. II, 2381, Order, June 12, 1987). Pursuant to the court's order, the escrow funds were paid out to Ganz, who deposited them in a personal escrow account and began using the money for purposes unrelated to Mushroom.

stipulation, he relied on Ganz's law firm, which he understood to be known for its bankruptcy expertise, to handle the assets until distribution. (Joint Appendix, Vol. II, 2601, Arnold Declaration, at ¶ 15; 2422, Arnold Deposition, at 80).

Thus, there is evidence in the record that could convince a reasonable trier of fact that the debtors in possession did not, as the bankruptcy court suggested, completely abdicate their responsibilities as trustees of the Mushroom estate. The evidence that the debtors in possession not only continued to work on bankruptcy related matters during the relevant time but also sought and received assurances concerning the assets could persuade a reasonable trier of fact that they had not surrendered all of their duties as debtors in possession and were not unreasonable in relying upon counsel's expertise to manage the bankruptcy assets.

Finally, there is some evidence from which a trier of fact could find that a reasonable person in the circumstances of Arnold would have relied on two bankruptcy court orders in entrusting the assets to Ganz: (1) the bankruptcy court's approval of the June 1987 stipulation that turned the Mushroom funds over Ganz to be held in escrow, and (2) a bankruptcy court order in September 1987 in which the bankruptcy court granted Ganz's motion to ex-cuse the debtor in possession from the statutorily required filing of operating reports.[16] Arnold cites the June 1987 order in his declaration, stating that following the order, he assumed the assets were being "invested in accordance with the special rules applicable to bankruptcy." (Joint Appendix, Vol. II, 2601, Arnold Declaration, at ¶ 15). Furthermore, concerning the September 1987 order suspending the statutorily required reports to the bankruptcy court, Arnold observed, "I had no reason to expect that the absence of such reporting indicated that a lawyer had absconded with escrow funds . . . ." (Joint Appendix, Vol. II, 2599, Arnold Declaration, at ¶ 10).[17] In effect, the two orders operated to provide Ganz with nearly exclusive control over the Mushroom assets and remove any mechanism by which the bankruptcy court might have monitored the use of those funds. A fact finder could infer from the bankruptcy court's orders and Ganz's and Arnold's statements that not only would a reasonable person in the position of the debtors in possession rely on court orders in delegating the responsibility for preserving bankruptcy estate assets to counsel (and thus fail to immediately discover counsel's thefts of estate funds), but the debtors in possession did in fact, subjectively, rely on the orders in entrusting the bankruptcy estate assets to Ganz and failing to monitor those assets.[18]

16. Such reports are required by 11 U.S.C. § 704(8), which states that the trustee shall, if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires.
The Mushroom businesses had filed regular operating reports with the bankruptcy court up until the entry of the bankruptcy court's September 1987 order, and filed no such reports after the order was entered.

17. Furthermore, as noted above, the bankruptcy court approved numerous requests for attorneys' fees. The bankruptcy code requires courts to monitor the reasonableness of requests for attorneys' fees, 11 U.S.C. § 329, precisely because "[p]ayments to a debtors's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." H.R.Rep. No. 95–595, at 329 (1977). Thus, under § 329, because the bankruptcy court has a statutory duty to monitor at least some aspects of court-appointed debtors' counsel, there could be some level of debtor reliance on the court inherent in such a statutory scheme.

18. Numerous courts have held that reasonable reliance on court orders in the bankruptcy context can operate in equitable fashion to mitigate late filings. *See, e.g., In re Cortes,*

While the evidence is not overwhelming in appellant's favor, I conclude on the record before me that a reasonable trier of fact could find under the objective test of due diligence that a reasonable person in the position of the Mushroom debtors in possession would have allowed the bankruptcy assets to be held in escrow by counsel and thus failed to discover a theft of bankruptcy funds. There is, therefore, a genuine issue of material fact as to whether or not appellants exercised reasonable diligence in a manner sufficient to toll the statute of limitations and avoid laches.

## III. CONCLUSION

■ The bankruptcy court acknowledged that whether an individual has exercised due diligence under the discovery rule is typically an issue to be decided by a trier of fact. *See Carns v. Yingling*, 406 Pa.Super. 279, 285, 594 A.2d 337, 340 (1991) (citing *Corbett v. Weisband*, 380 Pa.Super. 292, 551 A.2d 1059 (1988)). Indeed, "[i]n applying the discovery rule, whether a plaintiff should have made a timely discovery of his or her injury is generally an issue for the jury unless the undisputed facts lead unerringly to the conclusion that the time it took to discover an injury was unreasonable as a matter of law." *Lujan v. Mansmann*, No. 96–5098, 1997 WL 634499, at *5, 1997 U.S.Dist. LEXIS 14987, at *15 (E.D.Pa. Sept. 24, 1997) (quoting *A. McD. v. Rosen*, 423 Pa.Super. 304, 308, 621 A.2d 128, 130 (1993)).

On the record before me, I cannot conclude as a matter of law that "the undisputed facts lead unerringly to the conclusion" that the time it took the debtors in possession or even the subsequent Chapter 11 trustee to discover Ganz's thefts was unreasonable as a matter of law. *See Lujan*, 1997 WL 634499, at *5, 1997 U.S.Dist. LEXIS 14987, at *15. Rather, because I conclude that there are genuine issues of material fact here, this case is ultimately more along the lines of a "typical" reasonable diligence case that warrants the attention of a trier of fact. *See Carns*, 406 Pa.Super. at 285, 594 A.2d at 340.

This decision, admittedly, requires a close call. But case law dictates that on this question, the close call favors the nonmoving party, and the decision must be allowed to go to the trier of fact. The bankruptcy court erred in its conclusion that, as a matter of law, appellants had produced insufficient evidence to convince a reasonable fact finder that the debtors in possession exercised reasonable diligence sufficient to toll the statute of limitations and avoid laches. Therefore, the August 24, 1998 decision of the bankruptcy court will be reversed and the case will remanded.

An appropriate Order follows.

---

125 B.R. 418 (E.D.Pa.1991) (reliance on order from clerk or court sufficient to toll filing deadline); *In re Kearney*, 105 B.R. 260 (Bankr.E.D.Pa.1989) (reliance on court order sufficient to toll filing deadline, citing cases), *Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 629, 634 (6th Cir.1994) (reasonable reliance on oral communications of the clerk may toll filing deadlines). Reliance on court orders authorizing the hiring of counsel to assist in bankruptcy reorganization has also been found to provide sufficient grounds to reimburse counsel, despite a later revocation of those orders. *See In re Certain Special Counsel to the Boston & Maine Corporation*, 737 F.2d 115, 119 (1st Cir.1984).